GEORGE MILLER, APPELLANT, v. FRED W. COLLINS, RESPONDENT.

Submitted October 28, 1927—Decided February 6, 1928.

For the appellant, *Feder & Rinzler*.

For the respondent, *J. Raymond Tiffany*.

The opinion of the court was delivered by

PARKER, J. This is in substance a suit for medical malpractice, and the appeal is from a nonsuit directed by the trial court.

Defendant is a chiropractor. The complaint charges that he held himself out as a doctor of medicine and as having the requisite skill in that profession; that plaintiff was led thereby to believe that he was a medical doctor and consulted him as such when suffering from severe abdominal pains, which, in fact, were due to appendicitis and should have been diagnosed as such, but defendant assured him it was a trivial matter and not appendicitis, and that no operation was necessary, and plaintiff was persuaded not to submit to an operation until his condition became so much worse that one was imperatively necessary; whereby he suffered great pain, &c., and was disabled for a long period from doing his work.

The testimony indicated that plaintiff, on June 22d, was seized with severe abdominal pains, which "at times almost doubled him up." He consulted a Doctor Rubacky, who examined him and told him he had appendicitis and that there should be an operation. That Doctor Rubacky was right, is shown by the result of the subsequent operation; that his preliminary diagnosis was justified appears from the facts told him by plaintiff and developed by his examination; abdominal pain in the groin, vomiting spells, tenderness at McBurney's point on palpation, rigidity of the abdominal muscle, drawing up the right leg when on the examination table, temperature of one hundred and two and one-half and pulse one hundred and forty-four.

Plaintiff said it was evening and he wished to go home and see his wife before consenting to an operation. He went home; the pains continued; he could not sleep. In the morning, as he was at the telephone talking to Doctor Rubacky about the proposed operation, a friend advised him first to consult the defendant, and he was taken to defendant's office. Defendant was introduced as "Doctor Collins," and plaintiff testified that he did not know that defendant was a chiropractor and not a medical doctor and (on cross-examination) if he had been introduced as a chiropractor plaintiff would not have gone to him. Defendant examined him and said it was "not an appendix;" that he had taken other patients right off the operating table in a hospital

near by and had treated them successfully in every case. He caused plaintiff to strip to the waist and lie on a couch face down, gave him a sort of spinal massage, and looked into his eyes with some optical instrument. Plaintiff was told to come back the following day, and did so. He reported a continuance of violent pains through the night, and was told "it would all work out." He was placed this time on his back, and massaged in the sensitive region. Defendant furnished him a box of "whole food salt" for use as a condiment, or "Mediterranean sea salt" for external use, bearing the name of "F. W. Collins, M. D. Manager," and a box of powdered charcoal. This sort of thing continued for two or three days, the pain and distress increasing. Enemas were prescribed; an improper treatment according to the evidence. No examination was made beyond what has been described. Neither temperature nor pulse was taken, nor was there any palpation of the abdomen. Finally plaintiff went back to Doctor Rubacky and to the hospital, and the operation was had, disclosing an appendix which had ruptured. This, as Doctor Rubacky testified, made matters much more serious for the patient, who narrowly escaped with his life, was in hospital a month instead of ten days, and had to have several drains to carry off the pus that formed, resulting in adhesions which a "clean" operation would have avoided.

The trial judge granted a nonsuit remarking that there seemed to be no evidence to show that the injuries complained of could be traced to the delinquency of the defendant.

We consider that the nonsuit was erroneous. The complaint counted, in effect, on two causes of action; fraud, in defendant holding himself out as a doctor of medicine; and negligence, in failing to use ordinary care and skill in treatment. There was some evidence for the jury as to the first, and ample evidence as to the second, as should appear from what has been stated above. As to the particular ground of nonsuit relied on by the court—proximate cause—the testimony of Doctor Rubacky indicates that the aggravated condition at the time of the operation was something for which defendant was responsible. He was asked: "What effect, if

any, in your opinion, did the delay of about three days have upon this subsequent condition? *A.* Well, the delay directly caused the rupture, either due to the fact that he had taken enemas, either due to the fact that he had been given medication, or either due to the fact that he had been violently rubbed, as the patient himself described." And he added that the pus leaves adhesions, which would not occur if it had been a clean case, as it should have been. Elsewhere he testified that there had been no rupture when he was first consulted.

In our estimation there was a proper case for the jury as to the fraudulent holding out, the want of ordinary care and skill, and the resultant aggravation of conditions. The judgment will be reversed to the end that a *venire do novo* issue.

*For affirmance*—BLACK, KATZENBACH, VAN BUSKIRK, DEAR, JJ. 4.

*For reversal*—THE CHIEF JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, CAMPBELL, LLOYD, WHITE, McGLENNON, KAYS, HETFIELD, JJ. 11.